UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

JOHN VALENTIN,

                           Petitioner,

       v.                                    9:20-CV-1384
                                              (GTS)

SUPERINTENDENT JOHNSON, Acting Superintendent,
Green Haven Correctional Facility,

                         Respondent.

─────────────────────────────────

APPEARANCES:                                 OF COUNSEL:

JOHN VALENTIN
Petitioner pro se
16-A-2773
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

HON. LETITIA JAMES                            PAUL B. LYONS, ESQ.
Attorney for Respondent                        Ass't Attorney General
New York State Attorney General
28 Liberty Street
New York, NY 10005

GLENN T. SUDDABY
Chief United States District Judge

## DECISION and ORDER

## I.     INTRODUCTION

       Pro se petitioner John Valentin ("Valentin" or "petitioner") seeks federal habeas corpus

relief pursuant to 28 U.S.C. § 2254.  Dkt. No. 1 ("Pet.").  Respondent ("Johnson" or

"respondent") was directed to answer the petition.  Dkt. No. 5.  Respondent opposed the

petition.  Dkt. No. 11, Answer and Memorandum of Law in Opposition ("Resp. Memo."); Dkt.

No. 12, State Court Records.  Petitioner has filed a traverse.  Dkt. No. 14 ("Traverse").  For

the reasons that follow, Valentin's habeas petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

The following underlying facts were summarized by the New York State Appellate

Division:

> In the spring of 2015, police officers conducted two controlled buys,
> in which a confidential informant (hereinafter CI) purchased heroin
> from [petitioner] at his residence in the City of Albany. [Petitioner]'s
> residence was subsequently searched pursuant to a warrant, and
> heroin and items associated with the packaging and sale of drugs
> were recovered.  In June 2015, [petitioner] was charged in a six-count
> indictment.

*People v. Valentin,* 103 N.Y.S.3d 689, 691 (App. Div. 3rd Dep't 2019).

### A.  Trial

#### 1.  The People's Case

A jury trial was held in Albany County Court in February 2016.  T at 79-748.[1]  The

prosecution called several law enforcement officials to testify regarding the police

investigation.

On April 27, 2015, Det. William Norris ("Det. Norris") met with a confidential informant

("CI") in his office to discuss a controlled buy operation.[2]  T at 374.  The CI gave Det. Norris

information about a person who was selling heroin at the intersection of Clinton Street and

Second Avenue and went by the name of "Poppy."  *Id*. at 438.  Before the buy, Officer Amy

---

[1]  "T" refers to the transcript from court proceedings, found at Dkt. No. 12-1.  "SR" refers to the state court record, found at Dkt. No. 12.  Citations to the submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.

[2]  The identification of the CI was not disclosed to the jury and the CI did not testify at trial.  SR at 185.

Forgea ("Forgea") searched the CI and Detective Tyson Ruecker ("Det. Ruecker") searched the CI's vehicle. *Id*. The CI attempted, unsuccessfully, to contact "Poppy". *Id*. at 375. Det. Norris provided the CI with an electronic device to record high quality audio and video and a device capable of recording audio that Det. Norris could listen to "live time." T at 375-376. Surveillance team members were assigned to the immediate area, within a few blocks of the target residence. *Id*. at 376. The operation began on a predetermined route of travel with the CI in one vehicle and Det. Norris and Det. Ruecker in an unmarked SUV. *Id*. at 380. Det. Norris and Det. Ruecker followed the CI for two blocks and gave her location to other team members to continue surveillance. *Id.* at 380-381. Det. Norris continued to another location and listened to "everything the informant was doing." T at 381-382. Det. Norris heard the informant exit her vehicle and walk up to a house. *Id*. at 382. Det. Norris testified that there was a "pause" and then someone let the CI into the house.[3] *Id*. at 382.

Detective John Regan ("Det. Regan") testified he was designated as "the eye" and positioned himself one block east of 151 Clinton Street. T at 495-496. After Det. Norris notified him that the CI arrived at 151 Clinton Street, Det. Regan saw the CI exit the vehicle, walk up the steps to 151 Clinton Street and make contact with the occupant. *Id*. at 496-497. The CI entered the house and remained there for five to six minutes. *Id.* at 497. The CI then exited, entered the vehicle and drove east on Second Avenue. *Id*. at 497.

The surveillance video was played for the jury. T at 396. The video depicts the CI arriving at the residence and being welcomed inside by an individual, identified during the trial as petitioner, whom she called "Poppy." *Valentin*, 103 N.Y.S.3d at 692; T at 397.

---

[3] The audio recording of the first controlled purchase was marked as People's Exhibit 2 and admitted into evidence, over objection. T at 388.

Valentin is seen handing the CI a substance that he called "China White."  *Id*.

After the buy, Det. Norris obtained the CI's location from the surveillance team.  T at 388-389.  Det. Norris followed the CI back to his office, where he recovered ten bags that later yielded a positive result for heroin.  *Id*. at 389-390, 482, 485, 641.

On May 8, 2015, Det. Norris met with the CI and planned a second controlled buy operation at Valentin's house at 151 Clinton Street.  T at 400.  The CI contacted Valentin by telephone before the purchase.  *Id*. at 401.  Det. Norris and Det. Ruecker drove the CI to an area near Valentin's house and the CI was searched in the rear of their vehicle.  *Id*.  Det. Norris provided the CI with electronic audio and video recording devices and the device capable of recording and allowing him to listen to the live audio.[4]  *Id*. at 403.  The CI was released to begin the operation and Detectives Jason Kelley ("Det. Kelley") and Kevin Meehan ("Det. Meehan") conducted surveillance.  T at 403.  Det. Kelley watched the CI walk to Clinton Street.  *Id.* at 506.  Det. Meehan watched the CI walk into the front door of 151 Clinton Street and exit short time later.  *Id*. at 513.

The video recording taken by the CI inside the residence was played for the jury.  T at 418.  The video recording shows Valentin handing the CI certain items for which the CI pays him before leaving.  *Valentin*, 103 N.Y.S.3d at 692.

After the buy, Det. Meehan observed a person, who he later identified as Valentin, on the street near the Clinton Street residence.  T at 516.  The CI returned to Det. Norris' car and turned over a substance in ten bags later identified as heroin.  *Id*. at 220-221.

On May 21, 2015, Det. Norris and other officers executed a search warrant at

---

[4]  The audio recording of the second controlled purchase was marked as People's Exhibit 6 and admitted into evidence, over objection.  T at 412.

Valentin's apartment at 151 Clinton Street.   T at 427.   The officers recovered heroin, packaging materials, a can, a digital scale, a razor blade, and a ledger containing names, places, and dollar amounts.  *Id*. at 428.   Officers also found mail with Valentin's name and address, 151 Clinton Street, rent receipts, and other paperwork with Valentin's name.  *Id*. at 428-429.  Detective Michael Fargione and Sergeant Plante arrested Valentin outside 151 Clinton Street.  *Id*. at 498.

At the conclusion of the prosecution's case, Valentin's counsel made a motion to dismiss for failure to prove a prima facie case.  T at 649.  The court denied the motion.  *Id*. at 650.

### 2.  Pre-Charge Conference

Before summations, petitioner's counsel asked for a missing witness charge as to the CI.  T at 565-582.  The court entertained argument and ruled that the CI's testimony would be cumulative.  *Id.* at 580.  The court noted that the jury had been presented with video and audio evidence, as well as testimony of police officers.  *Id.* at 579-580.  The court advised counsel that he would be permitted to comment, during summation, in regards to the prosecution's failure to call the witness.  *Id.* at 580.  Petitioner's counsel noted his objection to the ruling.  T at 580.

### 3.  Summations and Deliberations

During summation, petitioner's counsel stated:

> One of the fundamental elements in this country under the Constitution, in this courtroom should be the right to face your accuser. Not have the cops tell you what they said.  The person should have been right there.  Should have been there for you to see. For you to visualize.  For you to interpret her motives, mannerisms, the way she said it and how she said it.  But you didn't get that chance, ladies and gentlemen.  It was important

5

for you to make that decision.  Instead you are fed a bunch of
police jargon.

T at 660.  Counsel continued, "the police were sent to [petitioner] by a confidential informant

whose name or face you don't even know. You don't."  *Id.* at 662.

Petitioner's counsel concluded:

> What did you see ladies and gentlemen? What did you hear?
> Only what they wanted you to hear. The reasonable doubt,
> ladies and gentlemen, is the fact that the confidential informant
> is not here. We don't know who she is. Don't know what she is.
> Don't know where she is. We go from point A to here and they
> don't tell you what point A is.  Where is that person ladies and
> gentlemen?  The one who started this and brought you all here.
> Who took three days out of your life. Don't you think you
> deserve an answer to that?

T at 665.

During deliberations, the jury asked to hear the audio recordings from April 7, 2015

and May 8, 2015.  T at 735-736.  With the consent of counsel, the audio recordings (People's

Exhibits 2 and 6) were played for the jury.  *Id*. at 736-737.

### 4.  Verdict

The jury found Valentin guilty of two counts of third-degree criminal sale of a controlled

substance, one count of third-degree criminal possession of a controlled substance, and one

count of seventh-degree criminal possession of a controlled substance.  T at 739-742.  The

jury acquitted Valentin of two counts of second-degree criminally using drug paraphernalia.

*Id*.

### B.  Sentencing Hearing

On July 1, 2016, the court sentenced Valentin as a second felony drug offender to

consecutive, determinate prison terms of six years followed by three years of post-release

supervision for each of the third-degree sale counts; three years, with a three year term of

post release supervision on the third-degree possession count; and one year of incarceration

on the seventh-degree possession count.  T at 758-801.

During the sentencing hearing, Valentin's new counsel argued that trial counsel failed

to request a missing witness charge.  T at 772.  The Court disagreed and stated:

> No, no he did ask for one and there was just so we're clear, he
> asked for a missing witness charge and there was great
> discussion again outside the presence of the jury in regards to
> his entitlement to such a charge. In fact I think if I recall
> correctly, and I believe I do, and the Court cited numerous
> cases, by both name and citation, and I have them in front of
> me now as to whether or not a missing witness charge would be
> duplicative in the context of this case. And so the record is clear
> now there was video and audio of the two sales in this case, in
> which your client was depicted on both those videos. The
> Court's ultimate decision was that a missing witness charge was
> not appropriate based upon the duplicative nature and the Court
> went through the entire four prong analysis as to whether or not
> the individual who made the purchases on both videos was
> necessary as a witness and the Court determined that the
> duplicative aspect of that prong was not satisfied that in fact it
> was duplicative testimony and that the Court did not grant a
> missing witness charge. However, as the record shows, the
> Court permitted and Mr. Santiago successfully to some degree
> I guess in the sense that there was an acquittal of several of the
> Counts, Mr. Santiago argued strenuously on summation in
> regards to the absence of that witness. So it's not as though he
> didn't ask for the charge, he did, and there was legal discussion
> and factual discussion and however the Court permitted Mr.
> Santiago to argue that on summation and I want to make sure
> the record is complete, it's not that he didn't ask for a missing
> witness charge, he did, he just didn't get one.

T at 772-773.

Petitioner's counsel reiterated his objection and argued the jury should have received

an instruction regarding a missing witness.  T at 774-775.

**C.  Direct Appeal**

Valentin appealed his conviction and, in a counseled brief to the Appellate Division, Third Department, asserted that: (1) trial counsel was ineffective; (2) the trial court erred in denying petitioner's request for a missing witness charge; (3) the evidence was legally insufficient; (4) the verdict was against the weight of the evidence; and (5) the sentence was harsh and excessive. SR at 180-181. Petitioner also filed a pro se supplemental brief and argued: (1) unlawful search and seizure; (2) malicious prosecution; and (3) prosecutorial misconduct. *Id*. at 366-367. The People opposed. *Id.* at 395-425.

On June 20, 2019, the Appellate Division found that the CI's testimony would have been cumulative, "as the officers' collective testimonies were corroborated by multiple video and audio recordings detailing the controlled buys." *Valentin*, 103 N.Y.S.3d at 694. The court concluded that the missing witness charge was not warranted and noted that the trial court "ameliorated any prejudice by permitting defense counsel to nonetheless comment on the CI's absence during summation." *Id*.

The court also rejected Valentin's ineffective assistance of trial counsel claims reasoning that, "[petitioner's] counsel vigorously objected to testimony [. . . ] and successfully obtained an appropriate limiting instruction." *Valentin*, 103 N.Y.S.3d at 694. The court also concluded that "counsel's efforts should not be second-guessed with the clarity of hindsight[.]" *Id*.

The Appellate Division found that the convictions were not against the weight of the evidence, found no "extraordinary circumstances" to warrant a reduction of petitioner's sentence, and concluded that Valentin's remaining pro se claims were without merit. *Valentin,* 103 N.Y.S.3d at 693-695.

Petitioner sought leave to appeal to the New York Court of Appeals, and that

application was denied on September 17, 2019.  SR at 523-524.

### D.  CPL § 440 Motion

In December 2019, petitioner filed a *pro se* motion to vacate his conviction.  SR at 523-561.  Petitioner presented arguments related to prosecutorial misconduct and judicial misconduct.  *Id.*  Petitioner's brief also included several claims related to the ineffectiveness of his trial counsel including, but not limited to, failure to "expos[e] the fact that the CI was gonna provide non-cumulative testimony[.]"  *Id.* at 550.

On April 23, 2020, the county court denied the motion without a hearing.  SR at 616-619.  The court found that petitioner's claims related to his trial counsel "were not properly raised in a CPL § 440.10 motion" and further, that the allegations were insufficient to warrant relief.  *Id.* at 617.  The court noted that the prosecutorial and judicial misconduct allegations were rejected by the Appellate Division and "solely reliant on [petitioner's] conclusory affidavit."  *Id.* at 618.  The court found the remaining arguments to be lacking in merit.  *Id.*

On September 18, 2020, the Appellate Division denied petitioner's application for leave to appeal.  SR at 737.

### E.  Writ of Error Coram Nobis

In May 2020, Valentin filed a pro se motion for a writ of error coram nobis, contending that appellate counsel was ineffective for: (1) failing to argue that trial counsel was ineffective; (2) omitting constitutional claims; and (3) submitting a "sub par" brief on appeal.  SR at 738-765.  The Appellate Division denied Valentin's application on August 7, 2020.  *Id.* at 766.  Valentin sought leave to appeal the denial of his motion, and the Court of Appeals dismissed the appeal.  *Id.* at 767-782.

### III.    PETITION

9

Valentin contends he is entitled to federal habeas relief for the following reasons: (1) ineffective assistance of appellate counsel (Grounds 1 and 2); (2) the trial court erred when it denied petitioner's request for a missing witness charge (Ground 3); (3) petitioner's confrontation and due process rights were violated (Ground 4); and (4) ineffective assistance of trial counsel (Ground 5).  Pet. at 6-10

## IV.    STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'"  *Nevada v. Jackson*, 569 U.S. 505, 508-509 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on

§ 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 567 U.S. 37 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 568 U.S. 289, 301 (2013). If there is no adjudication on the merits then the pre-AEDPA de novo standard applies. *See Cotto v. Herbert*, 331 F .3d 217, 230 (2d Cir.2003).

**V.    ANALYSIS**

For the sake of clarity, the Court considers petitioner's grounds for relief out of order.

11

### A. Confrontation Claims (Ground 4)

Valentin contends his confrontation rights were violated because he was unable to "impeach and cross examine" the CI.  Pet. at 9.  Respondent argues that petitioner's request for habeas relief, on this ground, is unexhausted and procedurally defaulted.  Resp. Memo. at 14.  Respondent also argues that petitioner's fourth ground is meritless.  *Id.* at 16-18.

### 1. Exhaustion

Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies or establish either an absence of available state remedies or that such remedies cannot adequately protect his rights.  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (citing 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994).  The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions."  *Daye v. Att'y Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982); *see also Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) ("Comity concerns lie at the core of the exhaustion requirement.").  Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law.  *Galdamez*, 394 F.3d at 72 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)).  "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."  *Daye*, 696 F.2d at 192.  This exhaustion requirement is satisfied if the federal claim has been " 'fairly present[ed]' " to the state court.  *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  A claim has been "fairly presented" if the state court was apprised of "both the factual and

12

the legal premises of the claim [the petitioner] asserts in federal court." *Daye*, 696 F.2d at 191.  A petitioner may fairly present the constitutional nature of his claim in the following manner:

> (1) reliance on pertinent federal cases employing constitutional analysis, (2) reliance on state cases employing constitutional analysis in like fact situations, (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194.

Here, petitioner did not present a Sixth Amendment claim in the state court in either his counseled or pro se briefs.  Accordingly, the claim is unexhausted.

After a court determines that a claim is unexhausted, it next considers whether the claim is procedurally defaulted.  In the event an exhausted claim is "barred by state law and . . . its presentation in the state forum would [therefore] be futile[,] . . . [the federal habeas court] theoretically has the power to deem the claim exhausted." *Aparicio*, 269 F.3d at 90. As the Second Circuit candidly noted, however,

> [t]his apparent salve ... proves to be cold comfort to most petitioners because ... when 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, federal habeas courts also must deem the claims procedurally defaulted.'

*Id*. (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

Here, petitioner's claim is procedurally defaulted because petitioner can no longer raise it in any state forum.  Petitioner already utilized the direct appeal to which he is entitled and, because the claim set forth in Ground Four was reviewable from the record, he cannot

13

raise it in a motion to vacate the judgment.  *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991) (explaining that, where "the one request for leave to appeal" was taken and additional collateral review would be barred because the issues could have been raised on direct appeal, "petitioner no longer has 'remedies available' in the . . . state courts ... and . . . he had met the statutory exhaustion requirements").

Once a claim has been deemed procedurally defaulted, it is subject to dismissal unless the petitioner can demonstrate "cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)."  *Aparacio*, 269 F.3d at 90 (citing *Coleman*, 501 U.S. at 753); *Fama v. Comm'r of Corr. Servs*., 235 F.3d 804, 809 (2d Cir. 2000).  To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule.  *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman*, 501 U.S. at 753.  Prejudice requires a petitioner to show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 154, 170 (1982)) (alteration in original).  If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice.  *See id.* at 496 (referring to the cause and prejudice test "in the conjunctive"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Courts have also recognized an equitable exception to the procedural bar in cases where a petitioner can prove actual innocence.  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).  "To be credible, such a claim requires petitioner to support his allegations of

constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324; *see also Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " *House*, 547 U.S. at 536-37 (quoting *Schlup*, 513 U.S. at 327); *see also Doe v. Menafee*, 391 F.3d 147, 160-62 (2d Cir. 2004). The Supreme Court cautioned, however, that "tenable actual innocence gateway claims are rare[.]" *McQuiggan*, 569 U.S. at 386; *see also House*, 547 U.S. at 538 (noting that the actual innocence gateway standard is "demanding and permits review only in the extraordinary case." (quoting *Schlup*, 513 U.S. at 327)) (internal quotation marks omitted).  "The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggan*, 569 U.S. at 401 (internal quotation marks omitted).  "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

In an effort to surmount the procedural bars, petitioner first contends that his trial counsel was ineffective.  Traverse at 3, 11.  Specifically, he argues "cause in this instance may not reasonably be separated from attorney error[]" and claims that trial counsel failed "to lodge a specific objection" to the prosecution's failure to produce the CI resulting in a lack of "critical impeachment." *Id*. at 3, 7-8.  However, an allegation of ineffective assistance of

15

counsel only provides a gateway if it rises to the level of *Strickland*. *See Carrier*, 477 U.S. at 492 ("Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default."). As discussed *infra*, petitioner has not shown that his trial counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688. Moreover, petitioner makes no argument whatsoever regarding prejudice.

Petitioner has not made the required showing of cause and prejudice or actual innocence to overcome the procedural bar to having his defaulted claim addressed by this Court. *See Kimbrough*, 949 F.Supp.2d at 361 ("Petitioner has not attempted to establish either cause for his procedural default or that he would be prejudiced should his claim not be reviewed. . . Further, . . . petitioner has made no showing that he is actually innocent of the underlying criminal charges at issue in this case."). Even if this claim was not procedurally defaulted, no habeas relief would issue.

## 2. Merits

"In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court ruled that the Sixth Amendment's Confrontation Clause bars the introduction of out-of-court testimonial statements in criminal proceedings unless the declarant was unavailable to testify and the defendant previously had the opportunity to cross-examine the witness." *United States v. Yaron*, No. S2-10-CR-363, 2011 WL 3279054, at *9 (S.D.N.Y. July 28, 2011). To establish a violation of the Confrontation Clause, a defendant must establish that the court admitted an out-of-court statement that was (1) testimonial and (2) hearsay. *Crawford*, 541 U.S. at 68. The "protection extends to statements of out-of-court witnesses offered through the in-court testimony of others." *Gossett v. Henderson*, No. 87 CIV. 5878, 1991 WL 135601, at *5

(S.D.N.Y. July 18, 1991) (citations omitted), *aff'd*, 978 F.2d 705 (2d Cir. 1992).  However, testimony "that is provided merely by way of background or is offered only to explain how certain events came to pass or why law enforcement officers took the actions that they did is not offered for the truth of the matter asserted, and thus cannot trigger a Confrontation Clause violation."  *Hurd v. Howes*, No. 2:11-10600, 2014 WL 793631, at *6 (E.D. Mich. Feb. 27, 2014) (, *aff'd*, 2015 WL 13927111 (6th Cir. Apr. 23, 2015); *see Liggins v. Wainwright*, No. 3:18-CV-02616, 2021 WL 2875687, at *11 (N.D. Ohio June 3, 2021) (holding that testimony from law enforcement agents and audio recordings from controlled buys offered for "context" are not offered for the truth of the matter asserted and thus, are not "testimonial"), *report and recommendation adopted*, 2021 WL 2856593 (N.D. Ohio July 8, 2021); *see also Berrier v. Shanahan*, No. 1:13-CV-302, 2014 WL 174777, at *6 (M.D.N.C. Jan. 13, 2014) (reasoning that a detective's testimony regarding his interaction with a CI when she returned from the defendant's residence after a controlled purchase "was not introduced to prove the truth of the matter asserted - namely that [the] [d]efendant sold the informant illegal drugs" but, rather, "to establish [. . ] the belief that controlled substances were sold by [the] [d]efendant at her residence" and for an application for the search warrant for the defendant's residence).

Here, petitioner asserts, in wholly conclusory form, that his right to confront the CI was violated.  Petitioner does not cite to any out-of-court statements made by the CI that were admitted at trial through testimony of Det. Norris or any other witness.  *See Dinkins v. Eagleton*, No. CIV. A. 9:13-1537, 2014 WL 4129583, at *13 (D.S.C. Aug. 19, 2014) (finding no Sixth Amendment violation where the petitioner failed to identify hearsay statements made by the confidential informants that were introduced at trial).

17

In light of the petitioner's pro se status however, the Court conducted a thorough review of the trial transcript for out-of-court statements by the CI presented by other law enforcement officials.  Det. Norris, the officer with the initial and primary contact with the CI, testified about his first encounter with the CI, but did not present any hearsay or testimonial statements from the CI.  Det. Norris testified:

> The informant had given me information about a person that she knew that was selling heroin at the intersection of Clinton Street and Second Avenue. The informant knew this person to be a Hispanic male, mid-50s that went by the name of Poppy and sold heroin by the bundle.  We discussed the operation. I garnered as much information as I could from the informant. I had the informant searched by a member of our uniform patrol and also had my assistant search the informant's vehicle.

T at 374.

Det. Norris was also questioned about meeting with the CI after the first controlled buy.  While he described the encounter, he did not proffer any testimony regarding his conversations with the CI or attribute any statements to her:

> Q.  When you get back to the office with the confidential informant what, -if anything, takes place?
>
> A. First thing I do is recover the bundle of heroin that the informant bought from the defendant. I also recover the audio and video recording device. I turn it off as well as the audio recording device. I turn it off and secure those. I take the informant up into the office. I have the informant's vehicle searched by Detective Ruecker for any existing contraband or currency. I request that, again, Officer Amy Forgea come up and search the informant for me for any contraband or money.

T at 389.

When Det. Norris began to testify about his second meeting with the CI, petitioner's counsel objected to the testimony as hearsay, and the court sustained the objection:

> Q.  On that date and time what, if anything, were you doing?

18

> A. We had planned a second controlled buy operation to Mr. Valentin's house at 151 Clinton Street.
>
> Q. What was the objective on that date?
>
> A. We were going to -- I met with the confidential informant again. We discussed the concept of the operation. The controlled buy operation. The plan was to buy another bundle of heroin from the defendant. Q. So what, if anything, occurred when you had that discussion?
>
> A. So we discussed - -
>
> MR. SANTIAGO: Objection, Your Honor. Hearsay.
>
> THE COURT: If you would Detective testify to what you did, please.
>
> A. I discussed the details of the operation with the informant. I searched the informant for any pre-existing contraband or US currency they may have with them, which was negative.

T at 400.

Finally, Det. Norris testified about his encounter with the CI when she returned to his office and did not present any hearsay or testimonial statements:

> Q. Does the confidential informant proceed back to you.
>
> A. Yes. They do.
>
> Q. When the confidential informant gets back into your line of sight what, if anything, happens?
>
> A. The informant returns to my location. Gets back in our car. Turns over a quantity of heroin. Again, it was a bundle or ten individual decks of heroin, which I have the informant place into another plastic evidence bag.

T at 409.

Upon review, the Court finds that while Det. Norris testified about information he received from the CI related to the controlled buys and the events surrounding the

purchases, he did not offer any out-of-court statements and a review of his testimony reveals that the information was not offered to prove the truth of the matter but rather, to explain police conduct and surveillance.  *See Gossett*, 1991 WL 135601 at *5 (holding that the confrontation cause was not implicated because the witness did not relate any "statements or even the substance of his statements" made by the witness who was not present at trial); *see also Anger v. Klee*, No. 2:14-CV-14159, 2015 WL 6437224, at *6 (E.D. Mich. Oct. 21, 2015) (concluding that the detective's "testimony about the confidential informant did not violate petitioner's Sixth Amendment right of confrontation because it was not offered to prove the truth of the matter asserted, but was only offered for the nonhearsay purpose of helping the jury to understand the surveillance and the search of petitioner's home by the police").

Because petitioner failed to identify any statements that were testimonial and admitted in violation of his Sixth Amendment rights, Ground Four is therefore denied and dismissed.

### B.  Missing Witness Jury Charge (Ground 3)

Petitioner claims that he is entitled to habeas relief because the trial court's refusal to present a missing witness jury charge violated his due process rights.  Pet. at 8.  Respondent argues that this claim is unexhausted, procedurally defaulted, and meritless.  Resp. Memo. at 13-18.

#### 1.  Exhaustion

A "basic requirement" of this exhaustion doctrine is that "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature."  *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (citation omitted); *see also Berry v. Hulihan*, No. 08 Civ. 6557, 2009 WL 233981, at *2 (S.D.N.Y. Jan. 28, 2009) (citations omitted); *Jackson v. Senkowski*, No. 03 CV 1965, 2007 WL 2275848, at *5 (E.D.N.Y. Aug. 7, 2007).  A "state

prisoner does not 'fairly present' a claim to a state court" where the appellate brief "does not alert [the court] to the presence of a federal claim[.]"  *Baldwin*, 541 U.S. at 32; *see also Williams v. Breslin*, No. 06–CV–2479, 2008 WL 4179475, at *3 (E.D.N.Y. Sept. 9, 2008) (citing *Baldwin*, 541 U.S. at 32).

Here, while petitioner argued in his appellate brief that the missing witness charge was erroneously denied, nowhere in petitioner's brief did he cite, or refer in any way to any federal case, statute or provision of the United States Constitution.  *See* SR at 189-191; *see Trimm v. Kirkpatrick*, No. 9:18-CV-287 (MAD/TWD), 2021 WL 981814, at *13 (N.D.N.Y. Mar. 16, 2021) (holding that claim was not exhausted where the petitioner's appellate brief did not "even mention the words 'due process' when arguing that the trial court erred in summarily denying his motion to withdraw his plea").  Rather, petitioner cited to state law cases, including *People v. Gonzales*, 68 N.Y.2d 424, 427 (1986), in support of his argument that the charge was appropriate.  *See Hawkins v. Graham*, No. 1:12-CV-0643, 2014 WL 317842, at *4 (W.D.N.Y. Jan. 29, 2014) (finding that the petitioner did not exhaust his due process argument related to a missing witness charge when he relied upon *People v. Gonzalez* in support of the argument that the trial court "had not properly applied the state law standards regarding the issuance of 'missing witness' jury charges"); *see also Lewis v. Griffin*, No. 9:14-CV-1411 (DNH/ATB), 2015 WL 6692220, at *6 (N.D.N.Y. Nov. 2, 2015) (finding claim unexhausted where the petitioner did not mention the federal constitution in his brief to the Appellate Division related to a missing witness charge).

The Court's review of the record confirms respondent's claim that the due process theory was not fully exhausted in the state courts.  Moreover, for the reasons set forth in Part V(A)(1) *supra*, this claim is procedurally defaulted.

Even assuming the claim was not procedurally defaulted, no habeas relief would issue.

### 2. Merits

Before a federal court may overturn a conviction due to an allegedly erroneous jury instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (internal quotation omitted).  "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (footnote omitted).

"A missing witness charge allows the jury to draw an adverse inference that the testimony of uncalled witnesses would have been unfavorable to the party that declined to call them." *Glover v. Bennett*, No. 9:98-CV-0607(NAM/GLS), 2001 WL 1862807, at *5 (N.D.N.Y. Feb. 26, 2001).  To be entitled to a missing witness charge under New York law, petitioner would have had to show that 1) the CI was knowledgeable about an issue material to the trial; 2) that the CI was expected to give noncumulative testimony favorable to the prosecution, and 3) that the CI was available to the prosecution.  *See Moore v. Herbert,* No. 9:02-CV-999 (NAM/GJD), 2005 WL 3591815, at *5 (N.D.N.Y. Dec. 30, 2005) (citing *People v. Macana*, 84 N.Y.2d 173, 196 (1994)).  "Whether a missing witness charge should be given lies in the sound discretion of the trial court." *Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir. 1992) (citations omitted).  "The failure to give the charge will rarely be sufficient to warrant habeas relief, since reviewing courts recognize the 'aura of gamesmanship' that frequently

22

accompanies requests for a missing witness charge." *Welch v. Artus*, No. 03-CV-865S, 2007 WL 962931, at *15 (W.D.N.Y. Mar. 29, 2007) (collecting cases).

Here, the trial court determined that the CI's testimony would be cumulative:

> I think it is clear and unequivocal in this case the testimony of the confidential informant would be cumulative in that regard. I will note both *Darby* and *Wilkins* specifically cited the fact that even absent the charge defense counsel was permitted to and should be permitted to extensively comment, if he so chooses, during summation to the effect the jury could draw inferences or that the jury could hold it against the prosecutor for failing to call the confidential informant. In this case absent the charge, and the Court does not intend to give the charge in the use of its discretion based upon all of the testimony in this case, I would permit Mr. Santiago to comment in summation in regards to the People's failure to call that witness.

T at 580.

The Appellate Division found that the CI's testimony would have been cumulative, "as the officers' collective testimonies were corroborated by multiple video and audio recordings detailing the controlled buys[.]" *Valentin*, 103 N.Y.S.3d at 694.   The Appellate Division also noted that any prejudice was "ameliorated" because petitioner's counsel was permitted to comment on the CI's absence during summation. *Id*.

A review of the record reveals that the jury heard testimony from the following law enforcement officials who participated in the controlled buys and surveillance: Det. Norris, Officer Forgea, Det. Ruecker, Det. Regan, Det. Kelley, and Det. Meehan.  The detectives and officers testified, at length, about planning and coordinating the surveillance, and what they heard and observed during the controlled purchases.  Petitioner asserts that the CI's testimony was necessary because she was the only person present at the in the room with petitioner. SR at 190, 550.  However, the jury was  presented with video and audio

recordings of both controlled buys. The first video depicts the CI arriving at Valentin's residence and being welcomed inside by an individual whom she called "Poppy." *Valentin*, 103 N.Y.S.3d at 692. Valentin is also seen handing the CI a substance that he called "china white." *Id*. The second video recording taken by the CI inside the residence was also played for the jury. T at 418. The video recording shows Valentin handing the CI certain items for which the CI pays him before leaving. *Valentin*, 103 N.Y.S.3d at 692. The jury also heard audio recordings from both controlled buys. Thus, this Court agrees with the state courts conclusions that any testimony that the CI may have presented would have been cumulative. *See Nunez v. Phillips*, No. 05 CV 2692, 2008 WL 2651419, at *3 (E.D.N.Y. July 3, 2008) (declining to find a constitutional violation where the petitioner failed to demonstrate that the confidential informant's testimony would not be cumulative of "the accounts of surveillance and arrest given by the two officers who participated in these events and did testify"); *see also Welch*, 2007 WL 962931, at *16 (holding that a witness' knowledge of a drug-buy was cumulative of the testimony from investigators and detectives who conducted surveillance operation).

Moreover, courts have found habeas relief to be "particularly inappropriate" where defense counsel was permitted to comment on the informant's absence during summation. *See Nieves v. Fischer*, No. 03 CIV. 9803, 2004 WL 2997860, at *9 (S.D.N.Y. Dec. 28, 2004); *Nunez*, 2008 WL 2651419, at *3 (finding no constitutional violation where the defense counsel addressed the fact that the informant did not testify during summation). Here, despite the fact that the jury was not presented with a missing witness charge, petitioner's counsel made several references to the CI's absence during the summation, without objection. T at 660-665.

24

Therefore, Ground Three is therefore denied and dismissed.

### C. Ineffective Assistance of Trial Counsel (Ground 5)

Petitioner claims, as he did in his CPL § 440 motion, that trial counsel was ineffective because he failed to argue that the CI would provide non-cumulative testimony.  Pet. at 10, Traverse at 6-9, 13, 14.  Respondent contends that petitioner's argument was rejected by the trial court.  Resp. Memo. at 18-19.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and that, but for counsel's errors, the result of the proceedings would have been different.  *Premo v. Moore*, 562 U.S. 115, 121-22 (2011); *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  Deficient performance requires a showing that counsel's performance fell below an objective standard of professional reasonableness.  *Harrington v. Richter*, 562 U.S. 86, 104 (2010).  "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."  *Richter*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted).  A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Even assuming a petitioner can establish counsel was deficient, he still must demonstrate prejudice.  *Id*. at 693-694.  This requires more than showing "the errors had some conceivable effect on the outcome," but that the counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*. at 687, 693.  It is "difficult to establish ineffective assistance when counsel's

overall performance indicates active and capable advocacy." *Richter*, 562 U.S. at 111.

In the decision denying Valentin's ineffective assistance of trial counsel claims, the trial court rejected petitioner's arguments as "largely" record-based and resolved by the Appellate Division.  SR at 617.  The court also concluded that petitioner's conclusory allegations were insufficient to warrant relief.  *Id.*  As such, this Court cannot conclude that the trial court clearly articulated a decision on the merits.

Upon review however, the Court finds petitioner cannot establish the first prong of the *Strickland* test: there is nothing in the record to support the conclusion that trial counsel's performance was objectively unreasonable.  As discussed *supra*, the testimony by law enforcement officials regarding the CI was not testimonial in nature but rather, presented as background information that formed the basis for the search warrant of petitioner's residence. Accordingly, because the Confrontation Clause of the Sixth Amendment does not apply, counsel's performance was not objectively unreasonable.  *See United States v. Matthews*, No. 3:00-CR-269, 2009 WL 3273868, at *3 (N.D.N.Y. Oct. 9, 2009); *see also Aramas v. Donnelly*, No. 99 CIV 11306, , 2002 WL 31307929, at *17 (S.D.N.Y. Oct. 15, 2002); *Aparicio*, 269 F.3d at 99 (holding that a claim of ineffective assistance cannot rest upon the failure to include a meritless argument).

Moreover, a review of the entire record does not support Valentin's claim that his counsel was ineffective during any proceedings in this matter.  Counsel participated in a *Dunway/Mapp* hearing[5], presented *Sandoval* arguments, exercised challenges during jury

---

[5]  A *Dunaway* hearing is used to determine whether an arrest is supported by probable cause.  *Dunaway v. New York*, 442 U.S. 200 (1979).  A *Mapp* hearing is a hearing to determine whether suppression of evidence obtained pursuant to a search or seizure by police officers is constitutionally warranted.  *See Mapp v. Ohio*, 367 U.S. 643 (1961).

selection, presented an articulate opening statement, vigorously cross-examined the prosecution's witnesses, and made a motion to dismiss at the close of the prosecution's case.  During the pre-charge conference, counsel vigorously argued in favor of presenting the jury with a missing witness charge, and, after the court ruled that it would not give the charge, counsel asked that his objection be noted for the record.  *Id*. at 571-580.  During closing arguments, petitioner's counsel made numerous references the CI's absence.  *Id.* at 660-665.  *See Richter*, 562 U.S. at 111 ("it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy").

Even assuming petitioner established that counsel's performance was deficient, petitioner cannot show prejudice; *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694.  As discussed *supra*, petitioner does not cite to any out-of-court statements made by the CI that were admitted at trial through testimony of Det. Norris or any other witness.  As such, he has not demonstrated that his counsel's failure to object on Sixth Amendment grounds, resulted in any prejudice.  *See Matthews*, 2009 WL 3273868, at *3; *see also United States v. Gaines*, No. 05-CR-132, 2009 WL 1457713, at *5 (N.D. Okla. May 22, 2009) (finding that the petitioner failed to establish the prejudice prong of an ineffective-assistance claim, "in light of this Court's finding that the information obtained by the government agents was used solely to facilitate their investigation into the identity of Petitioner as opposed to supplying 'testimonial' evidence at trial"). Because this Court has determined that the witness testimony did not violate the Confrontation Clause, "[i]t follows that counsel's failure to object to the admission" of such testimony is neither deficient nor could it have resulted in prejudice to petitioner.  *See Galvin v. Kelly*, 79 F.Supp.2d 265, 280

27

(W.D.N.Y. 2000).

Moreover, given the strength of evidence against petitioner, the Court cannot conclude that the jury would have acquitted petitioner.  *See Rodriguez*, 2017 WL 6404900, at *23.  As discussed supra, the jury was presented with several recordings of audio and video surveillance containing petitioner's voice and depicting petitioner.  In addition, the jury heard testimony from the officers regarding the evidence recovered as a result of the search warrant, including items related to the sale of drugs. The jury also heard testimony establishing that petitioner lived at the apartment at 151 Clinton Street.  To wit, Det. Regan testified that he observed petitioner exit the front door of 151 Clinton Street and Det. Norris testified that he found "quite a bit of mail" with petitioner's name and the address, 151 Clinton Street.  *Id*. at 427-429, 498.  Sgt. Plante and Detective Fargione, the officers involved with the "take down team" for the search warrant, testified that petitioner was observed leaving 151 Clinton Street and walking south on Clinton, then east on Second Avenue.  *Id*. at 539-540, 631.  Det. Fargione testified that he took a set of keys from petitioner, which he later used to open the front common door and apartment door for 151 Clinton Street.  *Id.* at 631-632.

Accordingly, Ground Five is therefore denied and dismissed.

**D.  Ineffective Assistance of Appellate Counsel (Grounds One and Two)**

Petitioner contends that he received ineffective assistance of appellate counsel.  Pet. at 6-7.  The Appellate Division summarily denied that claim.  SR at 766.  Since that decision constituted an adjudication of that claim on the merits, *see McLeod v. Bellnier*, No. 09 CIV. 3493, 2010 WL 2540411, at *6 (E.D.N.Y. June 16, 2010) (holding that the Appellate Division's summary denial of a coram nobis application "constitute[s] a state adjudication on

the merits of his claim of ineffective assistance of appellate counsel") (citation omitted), this Court briefly reviews the deference that it must afford that decision of the Appellate Division.

The Sixth Amendment has been interpreted to require that indigents be provided with assigned counsel for their first appeal as of right. *Smith v. Robbins*, 528 U.S. 259, 276-77 (2000). Thus, an individual is entitled to the effective assistance of appellate counsel. *Id.* at 287-88; *see Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985); *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010). The proper standard for evaluating a claim that appellate counsel was ineffective is the test enunciated in *Strickland*. *See Smith*, 528 U.S. at 287-288.

To establish that appellate counsel's conduct was objectively unreasonable, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Ramchair*, 601 F.3d at 73; *see Walker v. Ercole*, No. 08-CV-4204, 2011 WL 843966, at *9 (E.D.N.Y. Mar. 8, 2011). Rather, to prevail on such a claim, a petitioner must demonstrate that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Ramchair*, 601 F.3d at 73; *see Narcissi v. Mazzuca*, No. 05 CV 5710, 2012 WL 1392359, at *5 (E.D.N.Y. Apr. 23, 2012).

### 1. Ground 1

Petitioner asserts that his appellate counsel rendered ineffective assistance because he failed to argue on appeal that Valentin had received the ineffective assistance of trial counsel. *See* Pet. at 6. However, in cases such as the matter at hand, "because this Court has concluded that trial counsel did not render ineffective assistance, appellate counsel cannot be found to have provided constitutionally deficient representation by failing to assert an ineffective assistance claim relating to defense counsel." *Jones v. Greene*, No.

9:04-CV-0400 (NAM), 2007 WL 4246330, at *11 (N.D.N.Y. Nov. 28, 2007) (collecting cases). Therefore, Valentin's first ground for relief is necessarily without substance.  *See Jamison v. Bradt*, No. 09-CV-0747T, 2011 WL 2728394, at *7 (W.D.N.Y. July 12, 2011) (holding that "appellate counsel cannot be faulted for failing to raise a[] . . . claim . . . [that] itself is meritless"); *see also Aller v. Lape*, No. 09-CV-1192, 2011 WL 1827443, at *5 (E.D.N.Y. May 12, 2011) (observing that "because petitioner's underlying claim plainly lacks merit, as a matter of law this claim cannot give rise to a claim of ineffective assistance of . . . appellate counsel"); *Taylor v. Rivera*, No. 07 CIV. 8668, 2011 WL 4471919, at *24 (S.D.N.Y. Apr. 18, 2011) (finding that "petitioner cannot be prejudiced as a result of appellate counsel's failure to raise meritless claims") (citing *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)).

### 2.  Ground 2

Petitioner also claims that his appellate counsel was ineffective because he raised issues on appeal that were not preserved for review and failed to raise claims related to the "unlawful" search warrant.  *See* Pet. at 7.

Courts in this circuit have consistently held that counsel is not unreasonable for raising unpreserved claims on appeal.  *Finley v. Graham*, No. 12 CV 9055, 2016 WL 47333, at *15 (S.D.N.Y. Jan. 4, 2016) (collecting cases); *see also Sutherland v. Senkowski*, No. 02-CV-3833, 2003 WL 22953066, at *12 (E.D.N.Y. Oct. 17, 2003) (reasoning that appellate counsel, "can raise an unpreserved issue in the hope of convincing the appellate court to review the unpreserved issue in the exercise of its interest of justice jurisdiction").

Moreover, petitioner cannot demonstrate that counsel was unreasonable for failing to raise issues related to the search warrant and he cannot demonstrate prejudice because petitioner included these arguments in his pro se supplemental brief, *see* SR at 366-37, and

30

the Appellate Division expressly noted that it considered petitioner's pro se claims to be "without merit". *Valentin*, 103 N.Y.S.3d at ; *see Johnson v. Morton*, No. 19-CV-1777, 2020 WL 805158, at *6 (E.D.N.Y. Feb. 18, 2020) (finding that counsel was not deficient and the petitioner was not prejudiced by counsel's failure to make an argument that the petitioner asserted in his pro se supplemental brief, which was considered and rejected by the appellate court); *see also Jackson v. Poole*, No. 06 CIV. 00188, 2011 WL 4901314, at *11 (S.D.N.Y. July 19, 2011) (holding that appellate counsel's conduct did not fall below objectively reasonable standards because the petitioner raised the claims, pro se, on direct appeal and the claims were considered by the appellate court, which "leads to the further conclusion that, even if Petitioner's attorney had acted unreasonably in failing to raise them in the brief filed by counsel, Petitioner suffered no prejudice as a result"), *report and recommendation adopted*, 2011 WL 4908740 (S.D.N.Y. Oct. 14, 2011).

Indeed, the evidence before this Court reveals that petitioner's appellate counsel's overall performance was "active and capable." *See Richter*, 562 U.S. at 111. Petitioner's appellate counsel filed a 19-page brief with a comprehensive statement of facts and argued that evidence was improperly admitted into evidence, that the trial court erred when it failed to give a missing witness charge, that the evidence was legally insufficient to support the convictions, the verdict was against the weight of evidence and the sentence should be reduced. SR at 179-181. Counsel supported the arguments with relevant case law and sought leave to appeal to the New York Court of Appeals. *Id.* at 179-197, 523. The fact that the brief was unsuccessful, does not establish that appellate counsel's representation was deficient. *See Sutherland*, 2003 WL 22953066, at *12.

Since the Appellate Division's decision denying petitioner's ineffective assistance of

31

appellate counsel claim, is neither contrary to, nor reflects an unreasonable application of, the above-referenced Supreme Court precedent, the Court denies petitioner's first and second grounds for relief.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the Petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[6] and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

Dated: June 27, 2022
          Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

_____

[6] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).